**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>vs. )<br>) No. 2:18-cr-780-DCN<br>QUENTIN JOHN FISHBURNE, )<br>a/k/a "QUINTON JOHN FISHBURNE" ) **ORDER**<br>a/k/a "Q," )<br>)<br>Defendant. )<br>_____) | |

The following matter is before the court on defendant Quentin John Fishburne's ("Fishburne") second motion for a new trial, ECF No. 187, and motion to dismiss the second superseding indictment, ECF No. 191. For the reasons set forth below, the court denies both motions.

## I. BACKGROUND

The government jointly indicted Fishburne and Renata Shontel Ellison ("Ellison") for several offenses related to the alleged straw purchase of firearms and transfer of those firearms from Ellison, the purchaser, to Fishburne, who had previously been convicted of a felony in 2016, and others. Prior to trial, the government moved to continue Ellison's case, ECF No. 148, and eventually deferred her prosecution, ECF No. 168. On March 2, 2020, Fishburne's jury trial commenced, and on March 3, 2020, a jury convicted Fishburne on all three counts that the government pursued. Specifically, Fishburne was convicted of two counts of knowingly possessing firearms after being convicted of a felony in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e) (Counts 1 and 5); and conspiracy to transport firearms to persons who have previously been convicted of felonies in violation of 18 U.S.C. § 922(d)(1) (Count 2).

Fishburne's prior 2016 conviction arose out of a 2015 shooting that took place after a car race at Club Leon's in Walterboro, South Carolina. Fishburne and other members of the "Cowboys" gang attempted to rob two men who held the race's gambling proceeds. Three .40 caliber shell casings, among others, were recovered from the scene. For that incident, Fishburne entered an 11(c)(1)(C) guilty plea for aiding and abetting an attempted murder in aid of racketeering and received a sentence of time served to be followed by three years of supervised release.

On March 31, 2018, policed stopped Fishburne at a traffic checkpoint, smelled marijuana in his vehicle, searched the vehicle, and found a .40 caliber Smith & Wesson M&P Shield pistol (the "S&W .40") under the vehicle's front seat. A special agent later submitted the three .40 caliber shell casings recovered from the 2015 Club Leon's shooting for forensic analysis, and the analysis showed a match between the shell casings and the S&W .40 recovered under the seat of the car Fishburne was driving. At the time of his 2018 arrest, Fishburne was still serving his supervised release term in connection with the 2016 conviction. Following his 2018 arrest, the government moved to revoke Fishburne's supervised release and detain him.

Fishburne was originally indicted and arraigned on a single count of being a felon in possession of a firearm. ECF Nos. 2, 17. On February 12, 2019, the grand jury returned a superseding indictment, which charged Fishburne with five counts, ECF No. 35, and Fishburne was arraigned on this indictment on February 26, 2019, ECF No. 70. Then, on August 14, 2019, the grand jury returned a second superseding indictment, ECF No. 102, which was identical to the superseding indictment except that it modified Counts 1 and 5 to allege that Fishburne knew he had previously been convicted of a

crime punishable by a term exceeding one year in prison. ECF No. 102. On the day after the jury returned this indictment, the government sent an email to Fishburne's counsel in which it notified Fishburne's counsel that the United States was superseding indictments in all pending felon-in-possession cases to reflect the Supreme Court's ruling in <u>Rehaif v. United States</u>, 139 S. Ct. 2191 (2019). The government attorney then wrote: "I would respectfully request that you consider waiving the arraignment on the second superseding indictment . . . . If you are willing to waive arraignment, please complete and submit the attached form." ECF No. 195-1. The attached form referenced the superseding indictment in the caption, rather than the second superseding indictment. Fishburne's attorney filled out the form on Fishburne's behalf and wrote that the arraignment was scheduled for August 29, 2019, ECF No. 112, which was, in fact, the arraignment date for the second superseding indictment.

Separately, before trial, the parties finalized a stipulation regarding Fishburne's involvement in the 2015 incident, and it was entered into evidence as an exhibit. See ECF No. 157 at 2. The stipulation described how the shooting involved members of a criminal street gang named the Cowboys. Regarding Fishburne, the stipulation stated:

- Quentin Fishburne was convicted of a crime in connection with the shooting. He admitted that he was an associate of the Cowboys, that he was present at the scene, and that he drove another associate of the Cowboys away from the scene after the shooting.

- Authorities were not able to determine whether or not Mr. Fishburne fired any of the shots on November 6, 2015.

ECF No. 196 at 7.

After the March 2020 trial, the U.S. Probation Office issued a pre-sentence investigation report which recommended that the court apply a cross reference for attempted murder based on the 2015 shooting. As a result, the government reached out to

Fishburne's counsel to provide files of the 2015 shooting. The government had previously offered to make those same files available to Fishburne's counsel before the two sides drafted the stipulation. Among the 2015 shooting files were video recordings from surveillance cameras that were outside of Club Leon's, where the 2015 shooting occurred. One video allegedly depicts[1] Fishburne's blue Chevrolet Avalanche driving into the parking lot of the club just before the shooting and several yards away from where the victims were found. The video allegedly shows the truck's brake lights on and that no driver was seen exiting the vehicle.

On April 23, 2021, Fishburne filed a second motion for a new trial. ECF No. 187. The government responded in opposition on June 15, 2021. ECF No. 196. On May 15, 2021, Fishburne filed his motion to dismiss the second indictment. ECF No. 191. On June 15, 2021, the government responded. ECF No. 195. As such, both motions have been fully briefed and are now ripe for review.

## II. STANDARD

### A. Motion for a New Trial

Federal Rule of Criminal Procedure 33(a) permits a court, upon motion by a defendant, to "vacate any judgment and grant a new trial if the interest of justice so requires." The Fourth Circuit has recognized that "[a] new trial is a drastic remedy intended for the rare case." United States v. Chin, 1999 WL 333137, at *1 (4th Cir. May 26, 1999) (unpublished table opinion). Indeed, the Fourth Circuit has "held that a district

---

[1] This description of the video is as Fishburne describes it. According to the government, the quality of the video is "poor" and what happens in the video is largely indiscernible. ECF No. 196 at 12. Alternatively, the government describes a different series of events shown by the video. Id. at 13–14.

court should exercise its discretion to grant a new trial 'sparingly' and that the district court should grant a new trial based on the weight of the evidence 'only when the evidence weighs heavily against the verdict.'" United States v. Wilson, 118 F.3d 228, 237 (4th Cir. 1997) (quoting United States v. Arrington, 757 F.2d 1484, 1486 (4th Cir. 1985)).  In ruling on a motion for a new trial, "[t]he district court should examine all the evidence introduced at trial and—unlike when ruling on a motion for acquittal—the court may evaluate for itself the credibility of witnesses."  Chin, 1999 WL 333137, at *1 (citing Arrington, 757 F.2d at 1485).  The court may draw inferences unfavorable to the government from the evidence.  United States v. Campbell, 977 F.2d 854, 860 (4th Cir. 1992).

### B. Motion to Dismiss the Indictment

Federal Rule of Criminal Procedure 7(c)(1) provides that "[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government." "A motion to dismiss an indictment tests whether the indictment sufficiently charges the offense the defendant is accused of committing."  United States v. Vanderhorst, 2 F. Supp. 3d 792, 795 (D.S.C. 2014) (citations omitted).  "Although an objection based on the sufficiency of an indictment can be lodged at any time, if it is first raised on appeal, the 'indictment . . . [is] construed more liberally . . . and every intendment is then indulged in support of . . . sufficiency.'"  United States v. Williams, 152 F.3d 294, 298 (4th Cir. 1998) (quoting United States v. Sutton, 961 F.2d 476, 479 (4th Cir. 1992)).

### III.   DISCUSSION

Fishburne filed two separate motions: a motion for a new trial and a motion to dismiss the second indictment. The court addresses each motion in turn, ultimately finding that neither warrants reversing Fishburne's conviction.

**A.  Motion for a New Trial**

Fishburne contends that a new trial is warranted based on newly discovered, exculpatory evidence. Fishburne and the government disagree on what standard applies to decide whether a new trial should be granted. Fishburne argues that the "leading authority" is United States v. Chavis, 880 F.2d 788 (4th Cir. 1989) (cited at ECF No. 187 at 4). Chavis provides:

> In determining whether a new trial should be granted under Rule 33 of the Federal Rules of Criminal Procedure on the basis of newly discovered evidence, this circuit utilizes a five-part test: (i) is the evidence, in fact, newly discovered; (ii) are facts alleged from which the court may infer due diligence on the part of the movant; (iii) is the evidence relied upon not merely cumulative or impeaching; (iv) is the evidence material to the issues involved; and (v) would the evidence probably result in acquittal at a new trial? . . . Unless the answer to each of these inquiries is affirmative, a new trial is not appropriate.

Id. at 793 (citing United States v. Bales, 813 F.2d 1289, 1295 (4th Cir. 1987)).

Conversely, the government argues that Fishburne's motion for a new trial is based on a contention that the government improperly suppressed evidence. The government therefore argues that the motion is properly analyzed under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny. "To prevail on a Brady claim, the defendant must demonstrate (1) that the evidence is favorable, either because it is exculpatory or impeaching; (2) that the government suppressed the evidence; and (3) that the evidence was material to the defense." United States v. Higgs, 663 F.3d 726, 735

6

(4th Cir. 2011). The defendant bears the burden of establishing these elements. See United States v. Wilson, 624 F.3d 640, 661 (4th Cir. 2010).

Fishburne filed his motion based on Rule 33(b)(1), which specifically relates to newly discovered evidence. Fed. R. Crim. P. 33(b)(1). At the same time, Fishburne's argument is largely that he "was entitled to rely on the Government's representation of what was presented from the discovery material" but that the government did not present the evidence to Fishburne—a suggestion that the evidence was suppressed. However, the court finds that the governing standards presented by both sides are not mutually exclusive. The court could grant a new trial based on either the five-factor test or based on a Brady violation. See United States v. Robinson, 627 F.3d 941, 948, 951 (4th Cir. 2010) (evaluating the defendant's motion for new trial under both the Custis five factors—which are the same as those described in Chavis—and Brady v. Maryland).

Ultimately, the court need not decide which side is correct because whichever standard applies, Fishburne has failed to show that a new trial is warranted. Both standards require some level of diligence on the part of the defendant. Under Chavis, the court must consider (ii) the "facts alleged from which the court may infer due diligence on the part of the movant," Chavis, 880 F.2d at 793, while an alleged Brady violation will be considered "procedurally defaulted" by the defendant if "the factual basis for the claim was available to him" at the time he filed his claim, Strickler v. Greene, 527 U.S. 263, 279 (1999). Regarding a procedural default, however, "a party cannot establish cause to excuse his default if he should have known of such claims through the exercise of reasonable diligence." Id. (internal quotation marks and citation omitted).

Fishburne has failed to prove due diligence. By Fishburne's own admission,

7

> [T]he attorneys for the Government and the undersigned [Fishburne's attorneys] met to discuss entering into a stipulation. During the course of those discussions the Government offered to make available the entire file of the 2015 shooting. It was not apparent to the Defendant the need to review the file in light of the stipulation.

ECF No. 187 at 5. The video that Fishburne's counsel claims is exculpatory was a part of the file of the 2015 shooting. The file was offered to Fishburne's counsel for review prior to negotiating the stipulation; Fishburne's attorneys simply declined it. As such, under either standard, Fishburne cannot claim that the evidence was not discovered or was suppressed until Fishburne's counsel reviewed it after the trial. Courts have found that when the government makes the evidence available to the defendant's counsel, the evidence is not "newly discovered." See United States v. Moore, 572 F. App'x 214, 215 (4th Cir. 2014) (finding that the defendant failed to demonstrate that a report was "newly discovered" because it "show[ed] that the Government attached the report to a pretrial pleading to which Moore's trial counsel had access"). Similarly, evidence is not suppressed where it is "made available" to defense counsel prior to trial. See United States v. McDuff, 639 F. App'x 978, 981–82 (5th Cir. 2016) (finding lack of due diligence where the supposedly "'newly discovered' documents were made available to [the defendant] by the government" but the defendant "resolutely declined to review" the documents); see also Brown v. Clarke, 2021 WL 2188750, at *3 (W.D. Va. May 28, 2021) ("By making the video available to defense counsel for viewing, the Commonwealth satisfied its obligation under Brady [and other local rules] . . . .").

Even if the court were to advance to the inquiry under both tests that asks whether the evidence is material, the court would still find that Fishburne has not shown that a new trial is warranted. See Chavis, 880 F.2d at 793 (asking "(v) would the evidence probably result in acquittal at a new trial?"); Kyles v. Whitley, 514 U.S. 419, 433 (1995)

(requiring, under Brady, "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different"). Fishburne argues that he would never have agreed to the stipulation describing the 2015 shooting if he had been in possession of the evidence. He further argues that the stipulation was critical for "linking the 2015 shooting with the 2018 recovery of the same firearm," which Fishburne argues was the government's only basis for proving that Fishburne knowingly possessed the S&W .40 in 2018. ECF No. 187 at 7. The court disagrees that the video is material on these fronts, even if it showed exactly what Fishburne claims it does.

Fishburne's account of the video is described in the factual background section. However, according to the government, the video shows a driver wearing a yellow or orange shirt pulling the truck forward such that "the driver side doors are almost completely outside the view of the camera." ECF No. 196 at 13. The government disputes that the video shows the brake lights on the entire time; it argues that critically, during the time of the shooting, only the taillights remain half-illuminated. The government also emphasizes that the video shows one of the victims of the shooting in the background, indicating that the shooting had occurred in the vicinity of his truck— which the government argues harms Fishburne's case. In sum, the government argues that this video is the very opposite of beneficial for Fishburne and in fact would have been viewed as prejudicial by Fishburne and his counsel.

Even if the video shows exactly what Fishburne describes, Fishburne has failed to show that it would have been likely to result in an acquittal. The stipulation presented to the jury was a standard recitation of uncontroverted findings, like the fact that Fishburne

9

was "convicted of a crime in connection with the shooting." ECF No. 196 at 7. In fact, the stipulation stated that "[a]uthorities were not able to determine whether or not Mr. Fishburne fired any of the shots on November 6, 2015." Id. As the government notes, "Fishburne did not concede anything in the stipulation that he had not previously admitted in open court or that the Government could not have easily established." Id. at 17. Indeed, the court doubts whether Fishburne's attorneys would have even agreed to admit the video given that Fishburne managed to exclude from the stipulation the fact that the shooting was deadly, and the video would have shown otherwise.

Moreover, Fishburne seeks a new trial for his 2020 conviction, not the 2016 conviction that resulted from the 2015 shooting at the club. In the 2020 trial, the jury was not asked to determine whether Fishburne shot someone on November 6, 2015 but rather, was asked to determine if Fishburne knowingly possessed the S&W .40 on March 31, 2018. To find that the video would have definitively changed the verdict would mean ignoring the other evidence that imputes knowledge onto Fishburne, such as facts that Ellison recanted her testimony that she left the gun under Fishburne's seat and that the S&W .40 recovered under Fishburne's seat matched the shell casings found at the scene where neither party disputes Fishburne was present. Because Fishburne has failed to show that the supposedly exculpatory video evidence was either newly discovered or suppressed, and because the evidence would not have been likely to result in acquittal, the court denies Fishburne's second motion for a new trial.

### B. Motion to Dismiss the Second Indictment

Next, Fishburne moves to dismiss the second superseding indictment, thus vacating the conviction from this case. "To pass constitutional muster,

an indictment must (1) indicate the elements of the offense and fairly inform the defendant of the exact charges and (2) enable the defendant to plead double jeopardy in subsequent prosecutions for the same offense." Williams, 152 F.3d at 299 (citing Sutton, 961 F.2d at 479). The "longstanding rule of law that courts may not 'look behind' grand jury indictments if 'returned by a legally constituted and unbiased grand jury' is the touchstone for any inquiry into the legality of indictments." United States v. Mills, 995 F.2d 480, 487 (4th Cir. 1993) (quoting Costello v. United States, 350 U.S. 359, 363 (1956)). The court can exercise its supervisory authority over grand juries to dismiss an indictment for errors in the proceedings only where an irregularity prejudicing the defendant has been shown. United States v. Brewer, 1 F.3d 1430, 1433 (4th Cir. 1993) (citing Bank of Nova Scotia v. United States, 487 U.S. 250, 254 (1988)).

Fishburne first argues that the second superseding indictment "fail[ed] to contain the basic elements of the two offenses contained in Counts 1 and 5." ECF No. 191 at 3. Next, Fishburne argues that the waiver of appearance at the arraignment for the second superseding indictment he signed was "defective as it clearly fails to reflect Mr. Fishburne received a copy of the second superseding indictment," meaning that he did not actually waive reading or appearing for it. Id. The court addresses each contention in turn.

### i. Failure to Indicate Elements

First, Fishburne argues that under Williams, the government must (1) indicate the elements of the offense and fairly inform the defendant of the exact charges and (2) enable the defendant to plead double jeopardy in subsequent prosecutions for the same offense. Williams, 152 F.3d at 299. Under the first element of Williams, Fishburne

argues that the second superseding indictment "fail[ed] to allege that the Defendant knew of his status of a previously convicted person," as required by 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e). ECF No. 191 at 4. Fishburne cites United States v. Medley (Medley I), 972 F.3d 399 (4th Cir. 2020), a case which found that a failure to include the knowledge-of-status element in an indictment violated the defendant's substantial rights. However, Medley I was reheard en banc. United States v. Medley (Medley II), 828 F. App'x 923 (4th Cir. 2020). The Fourth Circuit ultimately remanded in accordance with the Supreme Court's ruling in Greer v. United States, 141 S. Ct. 2090 (2021), which held that the appellant was not entitled to plain-error relief for an unpreserved Rehaif claim. United States v. Medley (Medley III), No. 18-4789 (4th Cir. Oct. 6, 2021) (No. 105). In any case, Fishburne does not argue how the second superseding indictment is defective in failing to provide notice of the knowledge-in-status element. And it is difficult to envision how he would, given that the government specifically modified the indictment to state, in light of the Supreme Court's ruling in Rehaif, that the count requires "knowing that he had been convicted of such a crime." Compare ECF No. 35 at 1 with ECF No. 102 at 1. Therefore, the second superseding indictment did not "omit[] an essential element of an offense." Medley I, 972 F.3d at 407.

Fishburne then pivots his argument with regard to the indictment to describe deficiencies with other aspects of his conviction. Fishburne argues that both a stipulation about the 2016 conviction, ECF No. 191-2, and the court's jury instructions as to Counts 1 and 5 were in error for failing to include the knowledge-of-status element. Although Fishburne's motion is fashioned as a motion to dismiss the indictment, the court will provide Fishburne with the benefit of doubt and consider these arguments here.

Specifically, Fishburne first argues that the stipulation failed to establish that he knew he was a person prohibited from possessing a firearm. The stipulation in question reads: "The Defendant QUINTON JOHN FISHBURNE, beginning on December 4, 1995, and continuing through to March 31, 2018, <u>knew that he had been convicted of a felony punishable by a term exceeding one year and was therefore prohibited from possessing a firearm</u>." ECF No. 191-2 ¶ 2 (emphasis added). Fishburne argues that the stipulation was the government's "only evidence presented to the jury in satisfaction of its burden" but that it was insufficient because "[t]he word 'therefore' as included above is just a conclusion of his status[,] not a knowledge of his status, an extremely important distinction." ECF No. 191 at 7–8. As best as the court understands it, Fishburne means to suggest that the parties merely stipulated that Fishburne knew that he had been convicted of a felony by a term exceeding one year, but they did not stipulate that he knew he was prohibited from possessing a firearm, as that clause was offset by the word "therefore."

Even if this were a valid interpretation of the stipulation,[2] the stipulation still clearly establishes "that the defendant knew he violated the material elements of § 922(g)" and the related statutes, which is the government's burden under <u>Rehaif</u>. 139 S. Ct. at 2196. As the government notes, courts interpreting <u>Rehaif</u> have found that the <u>Rehaif</u> Court simply clarified that the government must prove that the defendant knew he

---

[2] Ironically, Fishburne's reliance on <u>Rehaif</u> may work against him as a matter of textual interpretation. In <u>Rehaif</u>, the Supreme Court stated that "[a]s a matter of ordinary English grammar, we normally read the statutory term 'knowingly' as applying to all the subsequently listed elements of the crime." <u>Rehaif</u>, 139 S. Ct. at 2196. For Fishburne's benefit, the court analyzes the stipulation as if it did not mean to say that Fishburne knew he was prohibited from possessing a firearm.

was in the category of persons prohibited from possessing firearms, but the ruling does not stand for the principle that mistake of law may be an excuse. For example, in United States v. Maez, the Seventh Circuit confronted the "threshold question concerning the scope of the Supreme Court's holding in Rehaif" by asking: does the court's ruling "require only that defendants know their status—in these cases, having a felony conviction? Or, construing the decision more broadly, must defendants know that it was a crime to possess a firearm as a result of their prohibited status?" 960 F.3d 949, 954 (7th Cir. 2020). The court determined the former question applied. See id. ("Rehaif's discussion of 'the well-known maxim that 'ignorance of the law' (or a 'mistake of law') is no excuse' makes doubly clear that § 922(g) requires knowledge only of status, not knowledge of the § 922(g) prohibition itself."). This interpretation has been echoed by other courts, including those in this district. See United States v. Jackson, 2021 WL 694848, at *6–7 (D.S.C. Feb. 23, 2021) ("[T]he Government does not read Rehaif as also requiring it to prove [the defendant] knew his conviction for a crime punishable by a term of imprisonment exceeding one year accorded him a status barring him from legally possessing a firearm . . . . A careful reading of Rehaif as buttressed by Fourth Circuit precedent before and after Rehaif conclusively demonstrates the Government's position, not [the defendant's], is correct.") see also United States v. Robinson, 982 F.3d 1181, 1187 (8th Cir. 2020) ("While Rehaif makes clear that the government must prove that a defendant knew he was in the category of persons prohibited under federal law from possessing firearms, Rehaif did not alter the 'well-known maxim that 'ignorance of the law' (or a 'mistake of law') is no excuse."); United States v. Singh, 979 F.3d 697, 727 (9th Cir. 2020) cert. denied sub nom. Matsura v. United States, 141 S. Ct. 2671 (2021)

14

("The Court [in Rehaif] did not hold that the Government must also prove the defendant knew his or her status prohibited firearm ownership or possession."). As the large body of law makes clear, it was sufficient for the stipulation to state—and for the jury to conclude in satisfaction of the element—that Fishburne knew of his status as a convicted felon, even if there were no stipulation that he knew he could not, in fact, possess a firearm.

Fishburne also argues that the court's jury instructions erred because it "mirrored the faulty stipulation and only stated that he knew he was previously convicted," not that he "knew of his status as a person prohibited from possessing a firearm." ECF No. 191 at 8. For the same reasons as the court discussed above—namely that Rehaif does not require proof of knowledge on the part of Fishburne that his status barred him from legally possessing a firearm—the court finds Fishburne's argument wholly unsupported and denies his motion to dismiss the indictment on these grounds.

### ii. Defective Waiver

Fishburne next claims that the waiver executed by his counsel is defective because the form failed to indicate the case number and stated it referred to the superseding indictment, rather than the second superseding indictment. The government responds that the issue amounts to a "scrivener's error" which cannot render Fishburne's waiver invalid, and even if it did, Fishburne cannot show that he lacked sufficient notice of the charges or was prejudiced by the error. ECF No. 195 at 4. The court agrees. As the court has discussed, the critical issue for whether an indictment is fatally improper is whether "an irregularity prejudicing the defendant has been shown." Brewer, 1 F.3d at 1433. The only other arraignment that the defendant could have waived his appearance

15

at had already occurred six months earlier. Moreover, counsel for Fishburne had indicated the correct date for the second superseding indictment on the waiver form. As such, the court finds there is minimal prejudice as Fishburne was reasonably on notice of the arraignment proceedings for which he was waiving his appearance. In any case, the error is not enough to warrant a reversal of Fishburne's conviction. See Beane v. United States, 2013 WL 2295464, at *3 (N.D. Iowa May 24, 2013) (quoting Fed. R. Crim. P. 10 advisory committee notes (citing Garland v. Washington, 232 U.S. 642 (1914))) (finding no reversible error occurred even though the defendant "insist[ed] he did not in fact sign the waiver" of personal appearance at his arraignment because "a failure to comply with arraignment procedures in a case later decided at trial is 'a mere technical irregularity not warranting a reversal of a conviction if not raised before trial'"). The court therefore denies Fishburne's motion to dismiss and finds no cause to reverse his conviction.

## IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** both motions.

**AND IT IS SO ORDERED.**

　

　

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**November 22, 2021**
**Charleston, South Carolina**